Allen CZERNIAK; Ronald Higgins; individually and on Behalf of others similarly situated, Plaintiffs,

v.

CITY OF MILWAUKEE, a municipal corporation of the State of Wisconsin; Harold A. Breier, Chief of Police of the City of Milwaukee Police Department; Richard Heder, Captain of the Vice Squad of the City of Milwaukee Police Department; Milwaukee Police Officer David Conroy; Milwaukee Police Officer Michael Erdman; and their agents, employees, assistants, successors and all other persons acting in concert with them or at their control, Defendants.

No. 84–C–259.

United States District Court, E.D. Wisconsin.

July 22, 1987.

James A. Walrath, Shellow, Shellow & Glynn, Milwaukee, Wis., for plaintiffs.

Reynold Scott Ritter, Asst. City Atty., Milwaukee, Wis., for defendants.

**DECISION AND ORDER**

WARREN, Chief Judge.

Plaintiffs Czerniak and Higgins brought suit pursuant to 42 U.S.C. § 1983 against defendants City of Milwaukee and certain Milwaukee police officers, seeking damages for alleged misconduct of the Milwaukee police officers in the arrest of Czerniak and Higgins on September 20, 1983. Czerniak and Higgins were arrested for allegedly engaging in sexual conduct in movie-viewing booths of an adult bookstore.

On June 13, 1985, in a *Memorandum and Order,* the Court denied the City of Milwaukee's motion for summary judgment, finding material issues of fact. The Court declined, at that juncture in the case, to make any substantive ruling with respect to the right of individuals to engage in sexual conduct in movie-viewing booths in adult bookstores.

On January 22, 1987, upon stipulation of the parties, plaintiff Czerniak was dismissed with prejudice from this action.

Presently pending before the Court is a motion by plaintiff Higgins for summary judgment on the issue of liability. The Court now considers the substantive issues relating to Higgins' alleged conduct and, based on the decision below, finds that sexual conduct in the movie-viewing booth of an adult theater is not constitutionally protected activity and, furthermore, is prohibited under Wisconsin and Milwaukee law. Accordingly, Higgins' motion for summary judgment is denied.

### I. Facts

For the purposes of Higgins' summary judgment motion, the following facts are taken as uncontested.[1]

On September 20, 1983, at approximately 10:35 p.m., Milwaukee Police Officer Michael Erdman was on duty with the Vice

---

1. Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company,* 778 F.2d 1278, 1281 (7th Cir. 1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987).

Squad. As part of that duty, he was at the Paradise Bookstore.

The Paradise Bookstore, located in Milwaukee, Wisconsin, contains booths in which persons view sexually explicit films. The booths have a door which the viewer may close with a latch after entering. On one of the side walls inside the booths is an oblong-shaped hole approximately 3½ inches wide and 6 inches long.

While present in the bookstore, Officer Erdman observed a booth with the "in use" sign lighted. He entered the booth next to it and observed the light of the projector from the adjoining booth shining through the hole. Officer Erdman then heard heavy breathing coming from the neighboring booth and looked through the hole. He saw that the person in the neighboring booth had his penis out and was masturbating. The person in the second booth was Higgins.

As Higgins exited the booth, he was arrested. Higgins said he was unaware of surveillance by Officer Erdman and denied that he had engaged in any act of masturbation.

During the month of September, 1983, the Milwaukee Police Department and the Milwaukee City Attorney's Office were at odds over the appropriateness of arresting persons engaging in sexual conduct in movie-viewing booths of adult theaters. Newspaper articles dated after the date of the arrest established that the position of the City Attorney's Office was one of not pursuing prosecution, while members of the Police Department expressed displeasure with that position and said arrests would continue. An October 27, 1983, memorandum from David A. Felger, Deputy City Attorney, to the Appeals Committee of the City Attorney's Office stated that the "current policy" of the office was to forego prosecution.

Figures show that in 1982, the Police Department made at least 76 arrests of persons allegedly engaging in sexual activity in movie-viewing booths, with the City Attorney's Office refusing to prosecute in each instance. Through October of 1983, there were an additional 41 arrests with no prosecution. Of the 117 arrests, 70 took place at the Paradise Bookstore.

The City Attorney's Office did not prosecute Higgins.

## II. Discussion

Higgins' motion for summary judgment rests on the propositions that the alleged conduct was constitutionally protected and not prohibited by law. The constitutional claim centers on (1) the privacy of the movie-viewing booth and (2) the pronouncements of the City Attorney's Office.

■ The Court finds no constitutional right to engage in sexual activity in movie-viewing booths of adult theaters.

First, the Court finds that the booths are public places. As the record indicates, the booths are open to use by any adult member of the public who wishes to view an adult movie. The booths allow other viewers to hear heavy breathing in a particular booth, as well as actually see into the booth through a hole 3½ inches wide and 6 inches long. This obviously is more than a mere peephole. Its size would seem to invite someone from an adjoining booth to view what is taking place in the so-called "privacy" of the booth.

Second, the Court finds no expectation of privacy for a person entering a movie booth to engage in sexual conduct. Besides the facts that the booths contain large viewing holes and walls thin enough to hear heavy breathing, the purposed design of the booth is one for movie-viewing. There simply cannot be a reasonable expectation that sexual activity in the booth would go undetected by members of the public.

Furthermore, one would no more reasonably expect sexual activity to take place in a movie-viewing booth than one would expect restroom activity to take place in a public elevator. Simply because a person is surrounded by four walls, the public nature of location is not automatically changed to that of private bedroom or washroom or whatever else the person enclosed imagines the place to be.

This view is consistent with other courts in similar matters. *See Ross v. Springfield School Dist. No. 19*, 691 P.2d 509, 512 (Or.App.1984) (no privacy expectation for sexual act taking place in enclosed movie booth with four-inch-diameter hole in wall) *rev'd on other grounds*, 300 Or. 507, 716 P.2d 724 (1986); *Liebman v. State*, 652 S.W.2d 942, 945 (Tex.Ct.App.1983) (viewing booths in adult bookstore were "public places"); *see also Wall Distributors v. City of Newport News*, 782 F.2d 1165 (4th Cir.1986) (prohibition on showing adult films in enclosed booths held constitutional); *cf. Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (use of glass telephone booth carries expectation of privacy as to sound, but not sight).

Higgins arguments make much of the facts that the booth was locked and that he was unaware of any observation. In light of the discussion above, the Court fails to see how these facts change the booth to a private place or create an expectation of privacy for engaging in sexual conduct. At best, they give rise to the inference that Higgins, once in the booth, is entitled to sole use of the particular booth as long as he wishes. This also would explain the "in use" sign referred to in the record.

■ Third, the Court does not find that the policy of the City Attorney's Office creates a civil rights violation for any arrest. The record indicates that although the City Attorney's Office refused to prosecute cases of this type, the City Police Department consistently pursued its policy of arrests. The Court is aware of no constitutional violation that arises when police officers, pursuant to properly enacted laws, arrest persons for violating those laws, even though prosecutors, pursuant to valid uses of discretion, decline to pursue prosecution through the courts. Furthermore, viewing the record in a light most favorable to the nonmoving party, any evidence

that establishes that Higgins relied on the pronouncements of the City Attorney's Office also establishes that Higgins would have been aware of the Police Department's policy of continuing arrests.

■ Higgins is left with arguing that he was arrested for engaging in conduct that was not against Wisconsin law. His arrest citation lists the offense as "disorderly conduct masturbation," a violation of ordinance number 106–1, which prohibits, *inter alia*, indecent conduct.[2]

Higgins argues that under state law, only sexual conduct that occurs "in public" can be punishable. Section 944.20(2), Wis. Stat., prohibits "Publicly and indecently expos[ing] a sex organ." Statutes dealing with similar conduct define "in public" as:

... a place where or in a manner such that the person knows or has reason to know that his or her conduct is observable by or in the presence [of others not involved in the sexual activity].

*See* §§ 944.15 & 944.17.

Based on the reasoning expanded upon above, the Court finds that Higgins' alleged sexual activity took place in "a public place." Therefore, there is no basis for the proposition that under state law, the City of Milwaukee could not forbid Higgins' alleged conduct.

### III. Summary

The Court finds:

1. a movie-viewing booth in an adult bookstore is a public place;

2. there is no reasonable expectation of privacy to engage in sexual activity in a movie-viewing booth of an adult bookstore;

3. the policy of the Milwaukee City Attorney's Office to forego prosecution of persons arrested for engaging in sexual activity in movie-viewing booths of adult theaters did not create a constitutional violation for police officers arresting persons engaging in such conduct, when that con-

---

**2.** Municipal ordinance 106–1 reads:

    **Disorderly Conduct.** Whoever does any of the following may be fined not more than two hundred dollars ($200):

    In a public or private place, engaged in violent, abusive, indecent, profane, boister-

ous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance.

duct is contrary to valid municipal and state laws.

4. the arrest of a person engaging in sexual conduct in a movie-viewing booth of an adult bookstore was not contrary to Milwaukee and Wisconsin law.

Accordingly, Higgins' motion for summary judgment is hereby DENIED. To schedule further proceedings in this matter, the Court will hold a status conference on *Friday, August 7, 1987 at 9:30 a.m.* in Courtroom 390 of the Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin.