**LIBRA BOOKS, INC., a Delaware corporation d/b/a Libra Books, Plaintiff,**

v.

**CITY OF MILWAUKEE and Philip Arreola, Defendants.**

**Civ. A. No. 91–C–0504.**

United States District Court, E.D. Wisconsin.

April 6, 1993.

James A. Walrath, Shellow Shellow & Glynn, Milwaukee, WI, William H. Theis, Chicago, IL, for plaintiff.

Scott G. Thomas, Asst, City Atty., Milwaukee, WI, for defendants.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

In this action, removed to this court from the Milwaukee County Circuit Court on May 15, 1991, plaintiff Libra Books, Inc. ("Libra"), claims that a Milwaukee ordinance concerning the structure of movie booths does not apply to Libra and that, even if it does, defendants' enforcement of the ordinance against Libra violates the First and Fourteenth Amendments. On May 1, 1992, defendants filed a motion for summary judgment. For reasons stated below, the motion is granted.

## FACTS [1]

In addition to selling adult books, magazines, and "sexually-oriented novelty items," Libra maintains 18 booths on its premises in which customers can watch pornographic videotapes. The tapes are displayed on coin-operated machines at a rate of $7.00 per movie or $.25 per minute. The booths, measuring about 3.5 feet (width) by 3.7 feet (depth) by 8 feet (height), are bounded on three sides by solid walls, one containing the projection screen, and on the fourth side by a partial swinging door that opens into a common hallway. The swinging doors are about 4.5 feet tall; the bottom of each door is about 2.2 feet from the floor, and the top of each door is about 6.8 feet from the floor. The doors cannot be locked or latched, and do not prevent Libra employees from determining whether a booth is being occupied by more than one person at a time. The hallways outside the booths are lighted to at least ten footcandles, so that removing the swinging doors would "impair substantially the viewing of movies" in the booths.

A Milwaukee ordinance provides in pertinent part:

Commercial establishments which offer private viewing of movies, tapes, slides, pictures or live performances of any kind must comply with the following requirements:

(1) BOOTH ACCESS. Each booth shall be totally accessible to and from aisles and public areas of the establishment. Access to a booth shall be unobstructed by doors, locks or other control-type devices.

(2) BOOTH CONSTRUCTION. (a) Any booth used to view a movie, tape, slide, picture or live performance of any kind must be so constructed as to discourage sexual activity and the spread of communicable disease by including, but not being limited to the following requirements:

1. Every booth shall be separated from adjacent booths and any nonpublic areas by a wall.

2. Have at least one side totally open to a public, lighted aisle so that there is an unobstructed view at all times of anyone occupying the booth.

\*    \*    \*    \*    \*    \*

(3) BOOTH OCCUPANTS. (a) Only one individual shall occupy a booth at any time.

(b) No individual occupying a booth shall, at any time, engage in any type of sexual activity or cause any bodily discharge or litter associated with sexual activity while in the booth.

(c) No individual shall damage or deface any portion of the booth.

(4) OPERATOR RESPONSIBILITY. It shall be the responsibility of the owner, operator, licensee and employes of the establishment to:

\*    \*    \*    \*    \*    \*

(b) Maintain at least 10 foot candles of light in the public portion of the establishment, including aisles, at all times.

(c) Insure compliance of the establishment and its patrons with the provisions of this section.

\*    \*    \*    \*    \*    \*

(5) ENFORCEMENT. Both the health department and the police department shall have the authority to inspect the premises during operating hours and to enforce the provisions of this section.

(6) PENALTY. (a) Upon conviction of a violation of this section, violators shall be fined not less than $50 nor more than $1,000. Each and every act of violation shall constitute a separate offense. Each day of violation, disobedience, omission, neglect or refusal shall constitute a separate offense. Upon default of payment, the violator shall be imprisoned not less than 3 days nor more than 30 days.

(b) Failure to comply with the requirements of this section may constitute grounds for the suspension, revocation or nonrenewal of licenses issued by the city to operate such an establishment.

---

1. What follows is taken from the parties' Stipulated Findings of Fact, filed May 1, 1992.

City of Milwaukee, WI, Code § 80–3 (1986). The ordinance is purportedly designed to control the transmission of communicable disease and to address the "very unsanitary practice" of engaging in sexual acts in movie booths. (May 1, 1992 Stipulated Findings of Fact, Ex. A.)

Defendants presently intend to enforce this ordinance against Libra, on the ground that the doors on Libra's booths violate subsection (2)(a)2. of the ordinance. In all other respects, Libra is in compliance with the ordinance. Defendants do not presently intend to enforce the ordinance against the numerous hotels in the city, whose rooms start at $25.50 per day, have doors, and enable their occupants to watch pornographic films for about $6.00 per film. Nor do defendants presently intend to enforce the ordinance against the various other businesses, such as photography studios, video production studios, television stations, and advertising agencies, that maintain darkrooms and the like for the "private viewing" of movies, pictures, and so forth.

## ANALYSIS

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the parties have identified and agreed upon all material facts, so the court may proceed to determine what legal conclusions may be drawn those facts.

The court addresses, in turn, Libra's claims that the ordinance infringes Libra's freedom of speech, that enforcement of the ordinance violates Libra's right to equal protection, that a critical term in the ordinance is unconstitutionally vague, and that Libra's establishment does not fall within the terms of the ordinance.

### I. The Free Speech Claim

Libra claims that the ordinance violates its right to freedom of speech because compliance with the ordinance would interfere with Libra's ability to show films in its booths. Defendants contend, however, that the ordinance is permissible as a "time, place, or manner" restriction. Such restrictions are valid if they are content-neutral, are narrowly tailored to serve a significant governmental objective, and leave open ample alternative channels of communication. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); *Berg v. Health and Hosp. Corp. of Marion County,* 865 F.2d 797, 802 (7th Cir.1989). In *Berg,* the court found valid an "open booth" provision almost identical to the provision at issue in this case. *Id.*

Libra insists that this case is different from *Berg,* however, because the amount of aisle lighting required by the Milwaukee ordinance would substantially impair the viewing of movies in the booths. *Berg,* by contrast, was based in part on the assumption that "[p]ersons who wish to watch entertainment in individual enclosures may continue to do so; their access to such films and other entertainment is not substantially impaired by the removal of doors on the booths." *Berg,* 865 F.2d at 803. Furthermore, says Libra, the instant case presents an alternative not considered in *Berg*—the use of partial doors—the availability of which demonstrates that the Milwaukee ordinance was not narrowly tailored to serve its objective. *Berg,* 865 F.2d at 804.

The court concludes, however, that the ordinance is a valid time, place, and manner restriction. Libra concedes that the ordinance is content-neutral, and that it serves the significant governmental interests in controlling the spread of communicable disease and in alleviating the unsanitary conditions of certain public accommodations. The court finds, furthermore, that the ordinance leaves open ample alternative channels of communication. True, the required lighting would physically impair the display of films in Libra's booths as they are presently constructed. Thus, the Milwaukee ordinance may close more channels of communication than were closed by the ordinance at issue in *Berg.* Nevertheless, Libra is not without alternatives. It may deepen its booths to reduce the ambient effect of aisle lighting. Or, it may show its films in rooms large

enough to fall outside the ordinance's definition of "booth," thus avoiding the no-doors rule altogether. Libra has not maintained that such alternatives do not exist or that the size of its booths are somehow a component of its "speech." *Compare: Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53–54, 106 S.Ct. 925, 931–32, 89 L.Ed.2d 29 (1986); *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293–94, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984).

Finally, the court finds that the ordinance is narrowly tailored to fit its objective. Libra contends that partial doors are a satisfactory alternative to the no-doors rule because they cannot be locked or latched and are two feet off the floor, so that inspectors or employees can easily determine whether there is more than one occupant in a booth. But a no-door requirement would seem to accomplish that and more, with less effort. The deterrent effect of partial doors depends to some extent on the likelihood that employees or inspectors will try to look behind the doors; as enforcement declines, so does deterrence. But if booths are open, the customers' bashfulness may accomplish what official enforcement cannot.

Further, even if a partial-door rule were as effective as a no-door rule in deterring booth-sharing, a partial-door rule surely would not be as effective in controlling solitary sexual activity. The ordinance is designed not just to eliminate sexual activity *among* customers, but also to alleviate the unsanitary conditions caused by sexual activity and "bodily discharge" in general. (May 1, 1992 Stipulated Findings of Fact, Ex. A.) A partial door may permit an inspector to ensure that a booth contains only one occupant, but it does not permit the inspector to determine how exactly the occupant is occupied. The no-doors rule, therefore, is not "substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800, 109 S.Ct. at 2758.[2]

Thus, the court concludes that the ordinance is a valid restriction on the manner in which Libra expresses itself and therefore does not violate Libra's First Amendment rights.

## II. The Equal Protection Claim

Libra claims that the ordinance is being selectively enforced in a way that violates the Fourteenth Amendment's guarantee of equal protection. Further, Libra claims that because the selective enforcement of the ordinance impinges on a fundamental right, the right to speak, it should be subject to the highest degree of scrutiny. The court has already concluded, however, that the ordinance does not violate Libra's First Amendment rights, and there is no evidence that defendants have singled out Libra because of the content of its movies. On the contrary, it is undisputed that the hotels against whom the ordinance has not been enforced show the same kinds of movies that Libra shows. Thus, the alleged discriminatory treatment does not impinge upon a fundamental right.

The applicable standard of review, therefore, is the "rational basis" standard, which requires the court to determine whether the plaintiff has been treated differently than others similarly situated and, if so, whether such differential treatment rationally relates to a legitimate state interest. *Wroblewski v. City of Washburn*, 965 F.2d 452, 458–59 (7th Cir.1992). The court finds no basis for concluding that Libra is similarly situated in pertinent aspects to the hotels and other businesses against whom the ordinance has not been enforced. Although these businesses may show the same kinds of movies that Libra shows, there is nothing in the record to indicate that the other businesses show their movies in rooms that might reasonably be described as "booths," whereas Libra's rooms clearly do fit that term. This is an important difference, for the city chose to regulate booths, not rooms in general. Presumably, the basis for that choice was that booths, unlike larger rooms, tend to be designed for frequent short-term use, thus creating a greater danger of unsanitary conditions. The court cannot find that to be an irrational basis for distinction.

---

**2.** Although the Supreme Court in *Ward* held that time, place, and manner restrictions are not subject to a least-restrictive-means analysis, it is, as a practical matter, difficult to determine whether such restrictions are "broader than necessary" without looking at available alternatives.

Further, even if the other businesses did maintain rooms comparable in size to Libra's rooms, there is a rational reason for not enforcing the statute against them. The city may have concluded that the danger of communicable disease and unsanitary conditions is most pronounced in establishments that maintain small rooms for the sole purpose of showing movies. Hotel rooms may provide access to movies, but they also provide a place to sleep and a place for shelter generally. Photography studios and the like are used not only for the display of movies and pictures, but also for their production and development. By contrast, Libra's rooms appear to be designed for one purpose—watching movies. It would not have been irrational for the city to conclude that unsanitary sexual behavior is likely to present more of a problem in small rooms devoted solely to private film-watching than in those serving a variety of functions.

Thus, the court concludes that defendants have not acted irrationally in choosing to enforce the ordinance against Libra but not against the hotels and other businesses where movies are also shown. Defendants, therefore, are entitled to summary judgment on Libra's equal protection claim.

### III. The Vagueness Claim

■ Libra claims that the ordinance violates the due process clause because of the vagueness of the word "booth." The due process clause requires that criminal statutes be written with sufficient definiteness to discourage arbitrary or discriminatory enforcement and to enable ordinary people to understand what conduct is prohibited. *United States v. Jackson,* 983 F.2d 757, 764 (7th Cir.1993). The court concludes that "booth" measures up to these standards. True, the word cannot be applied mechanically, for there is no bright line distinguishing a booth from some larger structure. But in the vast majority of cases, including this one, ordinary people know whether or not they are operating booths. To the extent there is uncertainty, the Wisconsin courts can clear it up.

Thus, defendants are entitled to summary judgment on Libra's due process claim.

### IV. Whether the Ordinance Applies to Libra

■ By its terms, the ordinance applies to businesses that enable customers to view movies in "private." Libra contends that, as a legal matter, private viewing is not available in its booths because a federal court in this district has held that there was no "expectation of privacy" in certain adult-bookstore booths and has further held that such booths were "in public" for purposes of Wis. Stat. § 944.20, which outlaws the public display of genitalia. *See Czerniak v. City of Milwaukee,* 669 F.Supp. 247, 249–50 (E.D.Wis.1987) (Warren, J.). *Czerniak* found that the booths did not afford an "expectation of privacy" and that they were "in public" because they contained "large viewing holes" and because noises in the booths were easily detectable from outside. *Id.* In other words, *Czerniak* used "privacy" and "public" to refer to the extent to which a booth's occupant was exposed to those outside the booth. By contrast, the ordinance at issue in this case presumably uses "private viewing" to mean "isolated" or "solitary" viewing, as opposed to "group" viewing. The ordinance cannot have been intended to apply only where viewing is "private" in the sense of being hidden, for the ordinance itself requires that movie booths be open on one side. The meaning of the ordinance, therefore, is not governed by *Czerniak.*

It is undisputed that Libra's booths offer solitary, rather than group, viewing of movies. Thus, defendants are entitled to summary judgment on Libra's claim that the ordinance does not apply to it.

**IT IS THEREFORE ORDERED** that defendants' May 1, 1992 motion for summary judgment is GRANTED and this action DISMISSED.