**Phil MATNEY and Satellite News and Video, Inc., an Illinois corporation, Plaintiffs,**

v.

**COUNTY OF KENOSHA, a Wisconsin Municipal corporation, Defendant.**

Civ. A. No. 94–C–1118.

United States District Court, E.D. Wisconsin.

June 2, 1995.

Michael Null, Chicago, IL, for plaintiffs.

Raymond J. Pollen, Michele M. Ford, Crivello Carlson Mentkowski & Steeves, Milwaukee, WI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

REYNOLDS, District Judge.

Plaintiffs bring this lawsuit to challenge the constitutionality of a regulation that requires booths, in which sexually explicit videotapes and films are displayed, to have at least one side open to a public lighted aisle to permit an unobstructed view of occupants. Plaintiffs assert this regulation violates their rights under the First Amendment of the federal constitution and the free speech clause of the Wisconsin Constitution, and they bring suit pursuant to 42 U.S.C. § 1983 for a declaratory judgment and temporary and permanent injunctive relief. Defendant County of Kenosha moves the court for summary judgment, and the court shall grant the motion. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. Facts

Plaintiff Phil Matney ("Matney") is a resident of Kenosha County, Wisconsin, and a patron of defendant Satellite News and Video, Inc., which owns and operates a business known as Odyssey–Satellite Video News ("Odyssey"), at 9720 120th Avenue in Kenosha County. (Compl. ¶ 6.) Odyssey is an adult video store that displays sexually explicit videotapes and films in small viewing booths.

In September 1992, the Kenosha County Board of Health issued Regulation No. HD–1.01–1, which sets standards for the construction and maintenance of coin-operated booths in "adult-oriented establishments."[1] The regulation contains an "open booth" provision, which requires that all booths have at least one side open to a public lighted aisle to permit an unobstructed view of occupants at all times.[2] The stated purpose of the open booth provision is to prevent the spread of AIDS and other communicable or sexually transmitted diseases.[3] Kenosha health in-

1. Regulation No. HD–1.01–1(2)(a) states in pertinent part:

    "Adult-oriented establishment" shall mean any premises including, but not limited to, "adult bookstores", "adult motion picture theatres", "adult mini-motion picture establishments", or "adult cabarets" to which public patrons or members are invited or admitted and which are so physically arranged so as to provide booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises for the purposes of viewing adult-oriented motion pictures, films, or videotapes.

2. Regulation No. HD–1.01–1(3)(b)(2) states: "Each booth, room or cubicle shall have at least one side totally open to a public lighted aisle so that there is an unobstructed view at all times of anyone occupying the same."

3. Regulation No. HD–1.01–1(1) states:

    It is a lawful purpose of the Kenosha County Board of Health to enact rules and regulations as are necessary for the preservation of health and to prevent the spread of AIDS and other communicable or sexually transmitted diseases in Kenosha County. It has been found by localities throughout the State of Wisconsin, particularly Milwaukee, Racine, Waukesha, Delafield, and Kenosha, as well as communities around the country that many adult-oriented establishments install movie viewing booths with doors in which patrons view adult-oriented videotapes, movies, films and other forms of adult entertainment, and that such booths have been and are being used by patrons to engage in sexual acts resulting in unsanitary, unhealthy and unsafe conditions in said booths and establishments. This regulation establishes standards for booth construction and maintenance in order to prevent the spread of AIDS

spectors report that used condoms and semen have been found in booths of various Kenosha adult-oriented establishments, although there is no evidence that such conditions have been found in Odyssey. (Def.'s Prop. Findings of Fact ¶ 8.)

On October 7, 1994, plaintiffs filed this lawsuit, alleging that Kenosha's open booth policy violates their constitutional rights to free speech, and asking this court to enjoin Kenosha County from enforcing Regulation HD–1.01–1. On January 24, 1995, defendant moved the court for summary judgment, and the motion became fully briefed on May 19, 1995.

## II. Analysis

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989).

### A. Time, Place, and Manner Claim

The principal constitutional inquiry for courts assessing the validity of open-booth regulations is whether the regulation constitutes a valid time, place, and manner restriction. *Berg v. Health and Hosp. Corp. of Marion County*, 865 F.2d 797, 802 (7th Cir.1989). To sustain a time, place, and manner restriction on free speech activity, the

and other communicable or sexually transmit-

government must show that the restriction: (1) is content-neutral; (2) serves a legitimate governmental objective; (3) leaves open ample alternative channels of communication; and (4) is narrowly tailored to serve the governmental objective. *Id.* Courts throughout the nation and in this district have consistently upheld open-booth provisions as constitutionally valid time, place, and manner restrictions. *Bamon Corp. v. City of Dayton*, 923 F.2d 470 (6th Cir.1991); *Doe v. City of Minneapolis*, 898 F.2d 612 (8th Cir. 1990); *Berg v. Health and Hosp. Corp. of Marion County*, 865 F.2d 797 (7th Cir.1989); *Wall Distrib., Inc. v. City of Newport News*, 782 F.2d 1165 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir.1982); *Libra Books, Inc. v. City of Milwaukee*, 818 F.Supp. 263 (E.D.Wis.1993); *Suburban Video, Inc. v. City of Delafield*, 694 F.Supp. 585 (E.D.Wis.1988).

In determining content neutrality in time, place, and manner cases, courts are to assess "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). When the purpose of a government regulation is unrelated to the content of expression, it is deemed content-neutral, even if it has an incidental effect on some speakers or messages but not others. *Id.* The Kenosha regulation was established for a purpose—to prevent the spread of sexually transmitted diseases—unrelated to the content of expression. And there is no evidence in the record to suggest that the Kenosha Board of Health disagreed with the content of the videos shown. Furthermore, the regulation applies to all such enclosed booths, regardless of the type of film shown. *Berg*, 865 F.2d at 802–03. Thus, the regulation must be deemed content-neutral by this court.

Second, the regulation serves a significant governmental objective. To make such a showing, the County must show that the evidence it relied upon in formulating the regulation "is reasonably believed to be rele-

ted diseases.

vant to the problem" the government is addressing. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 931, 89 L.Ed.2d 29 (1986). In this case, Kenosha County sought to address the problem of sexually transmitted diseases in general, and AIDS in particular. The Seventh Circuit has stated that "combating the spread of a deadly disease which has no known cure doubtless constitutes a legitimate governmental objective." *Berg*, 865 F.2d at 803.

■ In addition, the third prong of the time, place, and manner test—the availability of ample alternative channels of communication—is easily met because the Kenosha regulation does not in any way limit the availability of video booths as a means of viewing sexually explicit material. *Bamon Corp.*, 923 F.2d at 474. The viewing public is in no way " 'denied access to the market ... or ... unable to satisfy its appetite for sexually explicit fare.' " *Berg*, 865 F.2d at 803 (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976)). People may just as readily view the videos with open booths as with closed booths. *Berg*, 865 F.2d at 803.

■ Finally, the court concludes that the Kenosha regulation is narrowly tailored to serve the governmental interest. In order for a government enactment to be narrowly tailored: (1) there must be a significant relationship between the enactment and the governmental interest; and (2) less restrictive alternatives must be inadequate to protect the government interest. *Id.* The Supreme Court has held that "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation," the requirement of narrow tailoring is satisfied. *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989).

■ Plaintiffs argue that there are less restrictive alternatives to protect the government interest, chiefly that a "one person one booth" policy would achieve the same purpose of combatting sexually transmitted diseases and impose a lesser burden. They

further contend that sexual activity does not occur in the booths because they are too small, and they maintain that health officials have inspected Odyssey on numerous occasions and have never found semen residue in the booths. Plaintiffs maintain that even if there were semen residue, it is medically highly unlikely that a sexually transmitted disease could be transferred via contact with semen residue on the floor and walls of booths.

These arguments are unpersuasive, because the Kenosha regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. First, the regulation is aimed to prevent sexually transmitted diseases in all Kenosha adult-oriented establishments, not just in Odyssey, and prior to passage of the regulation, Kenosha health inspectors discovered used condoms and semen in single person booths at various adult-oriented establishments throughout the County. In addition, the Seventh Circuit has held that in passing open booth regulations, a governmental entity like Kenosha County is "entitled to rely on the experiences of other communities and it need only demonstrate that the evidence relied upon was 'reasonably believed to be relevant to the problem' that it was addressing." *Berg*, 865 F.2d at 803 (quoting *City of Renton v. Playtime Theatres*, 475 U.S. 41, 51–52, 106 S.Ct. 925, 931, 89 L.Ed.2d 29 (1986)). Evidence of semen and used condoms is indeed evidence reasonably related to the problem of addressing the spread of sexually transmitted diseases.

Moreover, the Kenosha regulation also aims to prevent "unsanitary conditions," which includes the prevention of not only sexual activity but bodily discharge in general. *Libra Books, Inc. v. City of Milwaukee*, 818 F.Supp. 263, 267 (E.D.Wis.1993). While AIDS and sexually transmitted diseases cannot be spread by masturbation or by semen on walls or floors of booths, Kenosha County has a substantial interest in ensuring sanitary, not just safe, public places. *Suburban Video, Inc. v. City of Delafield*, 694 F.Supp. 585, 590 (E.D.Wis.1988). A policy of "one person one booth" would not aid in the prevention of unsanitary conditions as effectively

as the open booth policy, so it cannot be said that the open booth policy is "substantially broader than necessary to achieve the government's interest." *Ward,* 491 U.S. at 800, 109 S.Ct. at 2758. Thus this court concludes that the Kenosha regulation is a valid restriction on the time, place, and manner in which plaintiffs express themselves and, therefore, does not violate their First Amendment rights.

## B. Expressive Privacy Claim

 Plaintiffs argue that the Kenosha regulation impermissibly chills the expressive privacy right to watch sexually explicit but not obscene videos in seclusion and with anonymity. This claim is without merit because the Supreme Court has held that the constitutionally protected right to watch obscene movies in the privacy of one's home does not create a right to watch the same movies in a public place. *Bamon Corp.,* 923 F.2d at 474. Any protection provided by the constitutional right to privacy does not extend to a place of public accommodation. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). This court joins the many other courts that have held that individuals do not have a constitutionally protected privacy right to view sexually explicit but not obscene videos in seclusion and with anonymity. *Bamon Corp.,* 923 F.2d at 474; *Doe v. City of Minneapolis,* 898 F.2d 612, 615 n. 11 (8th Cir.1990); *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1247 (9th Cir.1982); *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585, 591 (E.D.Wis. 1988).

## C. Content–Based Financial Burden Claim

 Odyssey also complains that the open booth policy imposes a substantial financial burden by allowing individuals to view and listen to videotapes without having to compensate Odyssey. In addition, Odyssey claims that the regulation is content-based because it does not impose any burden on those who disseminate expression concerning nonsexual matters.

Courts have denied arguments such as these in the context of open booth provisions, based on the teachings of Justice Powell's concurrence in *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Observing that the First Amendment was concerned not with economic impact but with freedom of expression, Justice Powell indicated that claims of economic disadvantage should prompt two inquiries:

> (i) Does the ordinance impose any content limitation on the creators of adult movies or their ability to make them available to whom they desire, and (ii) does it restrict in any significant way the viewing of these movies by those who desire to see them?

*Id.* at 78, 96 S.Ct. at 2456 (Powell, J., concurring). The Kenosha regulation satisfies both inquiries, because it does not impose a content limitation on the producers or distributors of sexually explicit films, and it does not significantly restrict the viewing of these films. *Doe v. City of Minneapolis,* 898 F.2d 612, 621 (8th Cir.1990). Rather, the regulation merely limits one way in which the films may be viewed and does not impose a time, place, or content restriction on the material or message conveyed. A court's proper focus should be the regulation's impact on freedom of expression, not on economic conditions. *Id.* at 620.

## III. Conclusion

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment is GRANTED and this case is dismissed.