Phil MATNEY and Satellite News and Video, Inc., Plaintiffs–Appellants,

v.

COUNTY OF KENOSHA, Defendant–Appellee.

No. 95–2590.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1996.

Decided June 13, 1996.

Michael Null, Reed Lee, Deidre Baumann (argued), Null & Associates, Chicago, IL, for plaintiffs-appellants.

Raymond J. Pollen (argued), Michele M. Ford, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for defendant-appellee.

Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiffs Satellite News and Video, Inc. ("Satellite") and Phil Matney brought suit in district court, seeking to have a Kenosha County, Wisconsin "open-booth" ordinance declared unconstitutional and to obtain an injunction prohibiting its enforcement. The ordinance requires that movie-viewing booths at "adult entertainment" establishments, such as the one owned by Satellite and patronized by Matney, be totally accessible from a public area and have at least one side totally open to a lighted public aisle. The district court granted summary judgment in favor of Kenosha County ("County") and the plaintiffs appeal. We affirm.

## I.

Satellite owns and operates an "adult entertainment" business in Kenosha County, Wisconsin, which displays sexually explicit but non-obscene films and videotapes in small, single-person viewing booths. Each booth is equipped with a monitor connected to several videotape players. By depositing a token in a device located within each booth, patrons of Satellite can activate the monitors and choose one of the several videotapes or films offered. The video booths are specifically designed and built so that persons standing outside the booths cannot determine the content or the specific nature of the film being viewed. Phil Matney is a resident of Kenosha County and a patron of Satellite. Matney does not wish to have the content of the videos he views and listens to revealed to persons passing by the booths.

In 1992, the Kenosha County Board of Health issued regulation HD–1.01–1, which establishes standards for the construction and maintenance of booths, rooms, or cubicles available for the private viewing of "adult entertainment" at "adult-oriented" establishments. The stated purpose of the regulation is to preserve health, prevent the spread of AIDS and other communicable or sexually transmitted diseases, and prevent unsanitary, unsafe and unhealthy conditions. Specifically, the regulation states:

(1) PURPOSE. It is a lawful purpose of the Kenosha County Board of Health to enact rules and regulations as are necessary for the preservation of health and to prevent the spread of AIDS and other communicable or sexually transmitted diseases in Kenosha County. It has been found by localities throughout the State of Wisconsin, particularly Milwaukee, Racine, Waukesha, Delafield, and Kenosha, as well as communities around the country, that many adult-oriented establishments install movie viewing booths with doors in which patrons view adult-oriented videotapes, movies, films and other forms of adult entertainment, and that such booths have been and are being used by patrons to engage in sexual acts resulting in unsanitary, unhealthy and unsafe conditions in said booths and establishments. This regulation establishes standards for booth construction and maintenance in order to prevent the spread of AIDS and other communicable or sexually transmitted diseases.

The Board considered evidence from the sheriff's departments in Kenosha County and other communities in reaching its conclusion that activity occurring in booths at adult oriented establishments leads to unhealthy and unsanitary conditions and to the transmission of AIDS and other sexually transmitted and communicable diseases.

Under the regulation, adult entertainment viewing booths must be "totally accessible to and from aisles and public areas ... and shall be unobstructed by any door, lock, curtain, blind, or other control-type devices." HD–1.10–1(3)(a). Further, each booth "shall be separated from adjacent booths ... by a wall" and "shall have at least one side totally open to a public lighted aisle so that there is an unobstructed view at all times of anyone occupying the same." HD–1.10–1(3)(b). The regulation also speaks to the lighting in and around the booths as well as to the color, texture, and material of booth walls and

floors. In addition, the regulation provides that only one individual occupy a booth at any time and that no occupant shall "engage in any type of sexual activity, cause any bodily discharge or litter while in the booth." HD–1.10–1(3)(c). The regulation does not attempt to restrict or control in any way the content of the adult videos shown.

Satellite received several citations for violating HD–1.10–1 and the County has threatened to continue enforcing the regulation, thereby prompting the instant litigation. Satellite and Matney's complaint alleged that the open booth regulation violates their First Amendment rights because it 1) impermissibly chills their "expressive privacy rights" by revealing the content of the protected expression they wish to disseminate and receive and 2) because it imposes a content-based financial burden on Satellite's protected expression. The plaintiffs also alleged that the regulation is not reasonably related to a legitimate government interest. The County moved for summary judgment and the district court granted its motion, finding that the proper question was whether the ordinance was a valid time, place, and manner restriction, which the court answered in the affirmative. The court also concluded that there is no "expressive privacy right" to view adult entertainment at public establishments in seclusion and anonymity and, additionally, that the regulation did not impose a constitutionally impermissible financial burden on Satellite.

## II.

Satellite and Matney contend on appeal that the district court erred in granting the County summary judgment on their First Amendment claims.[1] We review a district court's grant of summary judgment *de novo*. *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931 (7th Cir.1995). Summary judgment should be granted when the pleadings and supplemental materials present no genuine issue as to any material fact and the moving party is entitled to judg-

ment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Although we draw all reasonable inferences in favor of the party opposing a motion for summary judgment, this party may not simply rest on its pleadings or on mere conclusory allegations to avoid summary judgment; rather the non-moving party must come forward with evidence to show the existence of each element of its case on which it will bear the burden at trial. *Hedberg*, 47 F.3d at 931; *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir.1995). If no reasonable jury could find in favor of the party opposing the motion, it must be granted. *Hedberg*, 47 F.3d at 931.

### A.

The district court was correct in noting that the proper constitutional measure of an "open-booth" regulation is whether the regulation constitutes a valid time, place, or manner restriction. *See Berg v. Health and Hosp. Corp. of Marion County, Ind.*, 865 F.2d 797 (7th Cir.1989). In *Berg*, we confronted similar challenges to an ordinance analogous to the Kenosha County regulation at issue here and concluded that the ordinance was a constitutional manner restriction. *Id.* at 802–03. In fact, courts around the nation have consistently upheld open booth regulations and ordinances in the face of First Amendment challenges, finding them to be valid time, place, and manner restrictions. *See Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir.1982); *Doe v. City of Minneapolis*, 898 F.2d 612 (8th Cir.1990); *Bamon Corp. v. City of Dayton*, 923 F.2d 470 (6th Cir.1991); *Suburban Video, Inc. v. City of Delafield*, 694 F.Supp. 585 (E.D.Wis.1988); *Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486 (E.D.Tenn.1986); *Libra Books, Inc. v. City of Milwaukee*, 818 F.Supp. 263 (E.D.Wis.1993). Today we add another case to this already long line of authority.

---

1. We note that the County also argued that we and the district court lacked jurisdiction under *Rooker–Feldman* and also that we should abstain under the *Younger* and *Pullman* abstention doc-

trines. These claims are either without merit or have been waived, and as such will not be addressed.

In *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), the Supreme Court set forth the appropriate standard for reviewing limitations on the time, place, or manner of speech. It held that the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions: 1) are justified without reference to the content of the regulated speech; 2) are narrowly tailored to serve a significant governmental interest, and 3) leave open ample alternative channels for communication of the information. *Id.* at 791, 109 S.Ct. at 2753–54 (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)); *see also Bamon*, 923 F.2d at 473; Doe, 898 F.2d at 616–17. Thus, we analyze the Kenosha ordinance using the *Ward* factors.

The plaintiffs concede, with good reason, that the Kenosha County open booth regulation is content neutral. As the *Ward* Court explained, "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech *because* of disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. at 2754 (emphasis added). The controlling consideration is the government's purpose in enacting the regulation. *Id.* "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

In this case, the plain language of the regulation makes clear that it was passed for the purposes of preserving health, preventing the spread of AIDS and other communicable or sexually transmitted diseases, and preventing unsanitary, unsafe, and unhealthy conditions. Nothing in the words of the ordinance or in the County Board minutes suggests that the Board disagreed with the content or the message of the films and videos shown. The regulation is aimed at the "secondary effects" of private viewing booths— the possible spread of AIDS and other diseases and the creation of unsanitary, unhealthy conditions—not at the content of the films viewed in the booths. *See Berg*, 865 F.2d at 803; *Bamon*, 923 F.2d at 473; *Doe*, 898 F.2d at 617.

The plaintiffs additionally admit that the open booth regulation serves a legitimate government interest. It cannot be doubted that fighting the spread of communicable and sexually transmitted diseases and maintaining safe and sanitary conditions constitute significant government interests, nor is there any question that the regulation at issue furthers those interests. *See Berg*, 865 F.2d at 803; *Ellwest*, 681 F.2d at 1246; *Doe*, 898 F.2d at 617; *Wall*, 782 F.2d at 1169. Plaintiffs do contend, however, that the Kenosha regulation is not narrowly tailored to serve those interests. According to *Ward*, a requirement is narrowly tailored "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799, 109 S.Ct. at 2758; *see also Graff v. City of Chicago*, 9 F.3d 1309, 1321 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994). The Court further explained that provided "the means chosen are not substantially broader than necessary to achieve the government's interest, [ ] the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800, 109 S.Ct. at 2758. *Ward* thus expressly rejected the argument that the government must choose the "least restrictive means" or the "least restrictive alternative" in order to meet the definition of narrowly tailored. *Id.* at 798–99, 109 S.Ct. at 2757 ("Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so.").

Although the plaintiffs acknowledge in their brief that the County need not employ the "least restrictive means" to achieve its stated purpose, they nonetheless argue that the Kenosha regulation is not narrowly

tailored precisely because they believe there are less speech-infringing possibilities. This, of course, is not the correct inquiry under *Ward.* We are satisfied that Kenosha's goals of preventing the spread of certain diseases and maintaining sanitary and safe conditions at adult entertainment establishments "would be achieved less effectively absent the regulation." *See Berg,* 865 F.2d at 804.[2] Other courts have unanimously agreed. *See Doe,* 898 F.2d at 619 (8th Cir.1990); *Bamon,* 923 F.2d at 474 (6th Cir.1991); *Libra Books,* 818 F.Supp. at 267 (E.D.Wis.1993); *Wall,* 782 F.2d at 1170 (4th Cir.1986) (ordinance narrowly tailored under stricter "least restrictive means" test). Moreover, the alleged less restrictive alternative proposed by the plaintiffs—a strictly enforced one-person-per-booth rule-may prevent the spread of sexually transmitted diseases at Satellite,[3] but as the district court pointed out, the Kenosha regulation is aimed at preventing the spread of disease at all Kenosha establishments, not just Satellite. And the County had substantial evidence that condoms and semen were found in single-person booths at various establishments in Kenosha. In addition, evidence from other localities, which Kenosha was entitled to rely upon, *see Berg,* 865 F.2d at 803, demonstrated similar conditions. Furthermore, a one-person-per-booth policy would not be as effective as an open booth rule in preventing unsanitary and unhealthy conditions, as it would not effectively control solitary sexual activity. *See Libra,* 818 F.Supp. at 267 ("the ordinance is designed not just to eliminate sexual activity *among* customers, but also to alleviate the unsanitary conditions caused by sexual activity and 'bodily discharge' in general") (emphasis in original). Thus, we agree with the district court's conclusion that the open booth regulation is not "substantially broader than necessary to achieve the government's interest."

■■■ Moving on to the final *Ward* factor, we have previously held that open booth regulations leave open ample alternative channels of communication. *Berg,* 865 F.2d at 803. Similar to the ordinance in *Berg* and others that have been upheld, nothing in the Kenosha regulation limits the availability of individual booths as an avenue for watching adult entertainment, nor does it attempt to regulate in any manner the content of the films or videos displayed in the booths. *Id.; Bamon,* 923 F.2d at 474 (ample alternatives requirement "easily satisfied" by open booth ordinance); *Doe,* 898 F.2d at 620 (burden of showing ample alternatives "is easily met"). Persons in Kenosha County can watch the same sexually explicit material in the same single-person booths, just as they previously have, there will simply be no door on the booth. And in *Berg,* we concluded that "[p]lainly, for First Amendment purposes, an open booth is the equivalent to a closed booth, so far as viewing materials is concerned." 865 F.2d at 803.

In addition, there remain plenty of ways, other than through private viewing booths, that sexually explicit material can be disseminated and received. For example, Satellite could offer videos in a larger theater-type area, rather than in "private viewing" booths, rooms, or cubicles. *See Libra,* 818 F.Supp. at 267. And of course, patrons can always view adult entertainment supplied by Satellite in the privacy of their residences. In sum, the regulation in no way denies the viewing public access to the adult movie market, nor does it deprive the public of its

---

2. In *Berg,* which was decided prior to the issuance of *Ward,* we applied the stricter "least restrictive means" test, yet still found the ordinance to be narrowly tailored. *Id.* at 803–04, 109 S.Ct. at 2761. Plaintiffs attempt to distinguish *Berg* by arguing that they, unlike the plaintiffs in *Berg,* have suggested less restrictive alternatives. However, as already mentioned, this is not dispositive under *Ward* and, further, in *Berg* we stated not only that *"Berg* identified no less restrictive alternatives," but also that we did not think any existed. *Id.*

3. Satellite argues that at its facility it is physically impossible for more than one person to occupy a booth at any one time or for any patron to have interaction with patrons in neighboring booths. Further, it alleges that it strictly enforces this one-person-per-booth policy. Satellite therefore claims that sexual activity does not occur in its booths and that the transmission of AIDS and other diseases is effectively prevented with far less intrusion on First Amendment rights. Satellite contends that its claim is supported by the fact that health officials have inspected Satellite on several occasions and have never found semen residue or condoms in its booths.

ability to "satisfy its appetite for sexually explicit fare." *Berg*, 865 F.2d at 803 (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976)); *Ellwest*, 681 F.2d at 1245. On the contrary, under the regulation, Satellite can provide, except in totally closed booths, whatever protected videos or films it wishes, whenever and wherever it desires. The open booth regulation "in no sense purports to ban or even limit the number of forums for the public exhibition of erotic films. Erotic films continue to be fully available for public consumption, albeit not in enclosed booths." *Wall*, 782 F.2d at 1168 n. 5; *see also Doe*, 898 F.2d at 620.[4] The Kenosha County open booth provision leaves open ample means of communication and we thus conclude as a matter of law that it is a constitutional time, place, and manner restriction.

## B.

Plaintiffs also argue on appeal that the Kenosha regulation violates the First Amendment because it impermissibly chills their "expressive privacy right," i.e., their right to watch the films and videos in anonymity. They contend that if the doors are removed from viewing booths, persons will not be able to watch films without disclosing the content or specific nature of the videos to people standing in the required public aisles. This disclosure, plaintiffs maintain, will likely subject the viewers to embarrassment and humiliation. As a result, plaintiffs claim viewers will be chilled from receiving the protected expression, and the ability of adult entertainment establishments to disseminate the expression will be seriously burdened. Plaintiffs' argument fails for several reasons.

■ Every court that has addressed a privacy claim in this situation has concluded that patrons of public adult entertainment establishments do not have a general privacy right, whether within the penumbra of the First, Fourth, or Fourteenth Amendments, to watch sexually explicit movies in seclusion and anonymity. *See Berg*, 865 F.2d at 801 n. 4; *Doe*, 898 F.2d at 615–16 n. 11; *Bamon*, 923 F.2d at 474; *Broadway Books*, 642 F.Supp. at 492; *Suburban Video*, 694 F.Supp. at 591. Courts have stated that to recognize such a right "would be tantamount to finding that the patrons have some kind of right to masturbate ... in the seclusion of these booths." *Broadway Books*, 642 F.Supp. at 492; *see also Ellwest*, 681 F.2d at 1248 ("We decline to hold that the 'right' to unobserved masturbation in a public theater is 'fundamental' or 'implicit in the concept of ordered liberty.' "). We agree that there is no constitutional privacy right to view sexually explicit movies in a public place in seclusion. *See Berg*, 865 F.2d at 801 n. 4.

However, Satellite and Matney are not arguing that there is a general privacy right in the sense of a right to be behind closed doors or in seclusion or in a private place; rather they appear to be claiming that the First Amendment affords them a right to privacy in one's choice or selection of speech because of the chilling effect that will occur if the choices are publicized. In other words, they seek to avoid making public the connection between the individual patrons and the content of the materials they each choose to view. They believe the First Amendment offers this protection because without it, patrons will forego their right to receive the protected speech. Plaintiffs' basic contention is that "where a regulation's inevitable effect is to chill persons from engaging in or disseminating protected speech, even where the purpose of a regulation is unrelated to the

---

**4.** Satellite and Matney apparently recognize that the Kenosha ordinance does not on its face limit the use of single-person booths for viewing adult entertainment. They argue, however, that there are not ample alternative channels of communication because the open booth regulation will chill the use of viewing booths and will *in effect* foreclose such booths as a means of disseminating sexually explicit materials. First, as will be discussed, *infra* Section B, plaintiffs "chilling effect" argument is not supported by the record.

In addition, even if single-person viewing booths are effectively foreclosed to some extent, there are still ample alternative avenues of communication. Generally, time, place, and manner restrictions limit or foreclose some avenue of communication; the question is whether there are other adequate means of dissemination. Here there clearly are. Thus, plaintiffs "chilling effect" argument does not persuade us to change our conclusion that the Kenosha regulation leaves open ample alternatives channels of communication.

content of speech, the regulation is unconstitutional and must be invalidated."

■■■ This is simply not an accurate statement of First Amendment law. The Constitution does not afford a right to totally unrestricted, unchilled speech. Rather, the First Amendment affords the right to receive and disseminate protected speech, *subject to* valid time, place, and manner restrictions. *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54. Almost all time, place, and manner restrictions chill or restrict protected speech to a certain extent; however, this chill or limitation is often acceptable under the First Amendment. We have determined as a matter of law that the Kenosha regulation is a valid manner restriction, and thus any chill on viewers' rights to receive the protected sexually explicit speech is constitutionally tolerable.[5]

In addition, even if the plaintiffs "chilling effect" argument were viable, nothing in the regulation forces the booths to be arranged in a manner that reveals the content or nature of the film being displayed. The regulation requires only that each booth "have at least one side totally open to a public lighted aisle so there is an unobstructed view at all times of anyone occupying the same." Under the regulation, only the person, not the video screen, must be visible. Satellite presented no evidence that it was impossible to arrange the booths so that the screen itself was not visible, but the person inside was. *See Suburban Video*, 694 F.Supp. at 591. Therefore, the regulation does not have the inevitable effect of discouraging patrons from receiving protected speech; any First Amendment chilling effect can be avoided by rearranging or reconstructing the viewing booths. Beyond that, plaintiffs have presented no evidence demonstrating that viewers are in fact foregoing or would forego their right to watch sexually explicit films and videos because of the open booth policy.

## C.

Finally, Satellite maintains that the open booth regulation is unconstitutional because it imposes a substantial, content-based financial burden on its protected expression. Satellite alleged that the regulation would deprive it of income it would normally receive from patrons since, without doors on the booths, persons would be able to view the films from the public aisles without having to pay.

■■■ The Supreme Court has held that if a law or regulation imposes a financial burden on speakers because of the content of their speech, it must be narrowly tailored to achieve a compelling state interest. *See Simon and Schuster, Inc. v. Members of the New York Crime Victims Board*, 502 U.S. 105, 115–18, 112 S.Ct. 501, 508–09, 116 L.Ed.2d 476 (1991) (holding unconstitutional "Son of Sam law," which required forfeiture of income derived from reenactment of crime by way of movie, book, article, etc.); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (holding unconstitutional ordinance making it unlawful for drive-in theater to exhibit films showing nudity). Satellite likens the Kenosha County regulation to the laws at issue in *Simon and Schuster* and *Erznoznik* and further argues that similar to those laws, the regulation fails to meet strict scrutiny.

■■■ Satellite's argument fails for several fundamental reasons. First and foremost, as discussed above, the Kenosha regulation is not content-based. It was not passed "because of a disagreement with the message"

---

5. In support of its proposition that a regulation is invalid anytime it chills First Amendment rights, the plaintiffs cite *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). In those cases the Court struck down ordinances that required the NAACP to disclose its membership lists because of the chilling effect the ordinances would have on the members' right to associate. However, plaintiffs read these cases much too broadly; the cases do not hold that any chill on First Amendment rights will invalidate a regulation. Rather, in both cases the Court engaged in a balancing type test and in the end determined that the government's interest was not strong enough or related enough to justify the substantial infringement on association rights. *See NAACP v. Alabama*, 357 U.S. at 463–67, 78 S.Ct. at 1172–74; *Bates*, 361 U.S. at 524–27, 80 S.Ct. at 417–19. On the contrary, in the instant case, we have concluded, using the appropriate time, place, and manner analysis, that the Kenosha ordinance is a justified government action.

conveyed. *Ward,* 491 U.S. at 791, 109 S.Ct. at 2754. It was enacted for legitimate health and safety reasons. The fact that it may have an incidental financial effect on adult entertainment speakers and not on others is of no consequence. *Id.* Further, this argument suffers from the same infirmities as plaintiffs' chilling effect argument. The regulation does not compel the result that non-paying patrons will be able to view the films in the booths—only the person must be visible under the regulation. And again, Satellite offered no evidence to support its claim that it will suffer a serious financial burden due to the regulation. Therefore, we find that the district court was correct in granting summary judgment in favor of Kenosha County on this claim.

### III.

In sum, we find that Kenosha County's open booth regulation is a valid time, place, and manner restriction, and as such does not violate the First Amendment. Further, we find that Satellite and Matney's claims that the regulation violates their "expressive privacy rights" and is an impermissible content-based financial restriction are without support in fact or law. We thus AFFIRM the district court's grant of summary judgment in favor of Kenosha County.