In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3118

Pleasureland Museum, Inc., an Indiana
corporation; Ed Balanow; and Shirlee Balanow,

Plaintiffs-Appellants,

v.

Robert C. Beutter, as Mayor of the City of
Mishawaka, The City of Mishawaka, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 99 C 457--Allen Sharp, Judge.

Argued April 2, 2001--Decided May 1, 2002

   Before Ripple, Manion, and Kanne, Circuit
Judges.

   Kanne, Circuit Judge.  The City of
Mishawaka, Indiana enacted an ordinance
designed to regulate sexually-oriented
businesses. Pleasureland Museum, a
sexually-oriented business in Mishawaka,
filed suit under 42 U.S.C. sec. 1983,
alleging that the ordinance violated the
First Amendment, the right to privacy,
the Due Process Clause, and the Equal
Protection Clause. The district court
upheld the ordinance in its entirety. We
affirm in part, reverse in part, and
remand in part.

I.  History

   For twenty years, plaintiffs Ed and
Shirlee Balanow have operated
Pleasureland Museum as a sexually-
oriented business in Mishawaka, Indiana.
Pleasureland sells and rents adult-
oriented materials and offers its
customers private viewing booths. In
1999, Mishawaka's common council began
exploring ways to combat what it deemed
the harmful secondary effects associated
with sexually-oriented businesses./1 In
that same year, the council approved
Ordinance No. 44-15 (the "Ordinance"),
which established a licensing and

regulatory system applicable to all sexually-oriented businesses. Under the Ordinance's scheme, all sexually-oriented businesses operating within the city limits of Mishawaka are required to obtain a license and to comply with numerous regulations.

The preamble to the Ordinance states that the purpose of the Ordinance is "to protect the health, welfare, safety, morals and general welfare of the citizens of the City" by addressing the "deleterious effects of sexually-oriented businesses within the City." Further, the preamble explains that the Ordinance has "neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials."

Section 125.02(A)(2) defines the different types of sexually-oriented businesses subject to the Ordinance and in relevant part provides:

"Adult Bookstore", "Adult Novelty Store" or "Adult Video Store" means a commercial establishment which has as a significant or substantial portion of its stock-in-trade or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising to the sale or rental, for any form of consideration, of any of the following:

a. Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, slides, or other visual representations [collectively "Media"] which are characterized by the depiction or description of "specified sexual activities" or "specified anatomical areas";

b. Instruments, devices, or paraphernalia which are designed for use or marketed primarily for stimulation of human genital organs or for sadomasochistic use or abuse of themselves or others.

c. An establishment may have other principal business purposes that do not involve the offering for sale rental or viewing of materials depicting or describing "specified sexual activities" or "specified anatomical areas," and

still be categorized as [an] adult bookstore . . . .

   Section 125.02(P) defines "Specified Anatomical Areas" as "[l]ess than completely and opaquely covered humangenitals, pubic region, buttocks, anus, or female breasts," and "[h]uman male genitals in a discernibly turgid state, even if completely opaquely covered" (collectively "nudity"). Section 125.02(Q) defines "specified sexual activities" as:

1. The fondling or other intentional touching of human genitals, pubic region, buttocks, anus, or female breasts;

2. Sex acts, normal or perverted, actual or stimulated, including intercourse, oral copulation, or sodomy;

3. Masturbation, actual or simulated; or

4. Human genitals in a state of sexual stimulation, arousal or tumescence;

5. Excretory functions as part of or in connection with any of the activities set forth in subdivisions (1) through (4) of this subsection.

(collectively "sexual activities").

   Sections 125.03 though 125.12 outline the licensing and regulatory scheme applicable to sexually-oriented businesses. Section 125.13 explains the requirements for employee licenses and Section 125.14 places restrictions on the exhibition of sexually-explicit films or videos in video booths and provides in relevant part:

A. A person who operates or causes to be operated a sexually oriented business, other than a sexually oriented motel/hotel, regardless of whether or not a permit has been issued to said business under this Ordinance, which exhibits on the premises in a viewing room of less than one hundred fifty (150) square feet of floor space, a film, video cassette or other video reproduction which depicts specified sexual activities or specified anatomical areas, shall comply with the following requirements:

1. Upon application for a sexually oriented business permit, the application

shall be accompanied by a diagram of the premises showing a plan thereof specifying the location of one or more manager's stations, the location of all overhead lighting fixtures and designating any portion of the premises wherein patrons will not be permitted. A manager's station may not exceed thirty-two (32) square feet of floor area with no dimension greater than eight (8) feet.

. . . .

4. It is the duty of the owners and operator of the premises to insure that at least one employee is on duty and situated at each manager's station at all times that any patron is present inside the premises.

5. The interior of the premises shall be configured in such a manner that there is an unobstructed view from a manager's station of every area of the premises to which any patron is permitted access for any purpose, excluding restrooms. Restrooms may not contain video reproduction equipment. If the premises have two or more manager's stations designated, then the interior of the premises shall be configured in such a manner that there is an unobstructed view of each area of the premises to which any patron is permitted access for any purpose from at least one of the manager's stations. The view required in this subsection must be by direct line of sight from the manager's station.

6. It shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present on the premises to insure that the view area specified in Subsection 5 remains unobstructed by any doors, walls, merchandise, display racks or other materials or person at all times and to insure that no patron is permitted access to any area of the premises which has been designated as an area in which patrons will not be permitted in the application filed pursuant to Subsection A. of this section.

("Open Booth Restrictions"). Section 125.16 restricts the use of advertising, lighting, and exterior painting by sexually-oriented businesses ("Signage and Painting Restrictions"), and Section 125.19 regulates live entertainment./2

Section 125.22 bans the distribution of sexual devices:

A. It is unlawful for anyone to distribute, for commercial purposes, sell or offer for sale any device, instrument or paraphernalia designed or marketed primarily for stimulation of human genital organs or for sadomasochistic use or abuse of themselves or others.

B. Such devices, instruments or paraphernalia shall include, but are not limited to, phallic shaped vibrators, dildo's, muzzles, whips, chains, bather restraints, racks, non-medical enema kits, body piercing implements (excluding earrings or other decorative jewelry) or other tools of sado-masochistic abuse.

Section 125.21 imposes a fine of up to $2,500 for any violation of the Ordinance. Finally, Section 125.23 contains a severability clause: "If any section, subsection or clause of this Ordinance shall be deemed to be unconstitutional or otherwise invalid, the validity with the remaining section, subsection and clauses shall not be affected thereby."

Shortly after its enactment, plaintiffs sued Mishawaka, seeking a permanent injunction against enforcement of the Ordinance, damages, and declaratory judgment. Mishawaka agreed not to enforce the Ordinance until the district court reached a decision on summary judgment. Both parties moved for summary judgment, and the district court granted Mishawaka's motion and entered judgment in its favor.

On appeal, plaintiffs contend that: (1) the Ordinance's definition of regulated businesses is facially overbroad; (2) the ban on the sale of sexual devices is facially void-for-vagueness and overbroad and violates the right to privacy; (3) requiring applicants and employees to provide significant personal information in order to obtain licenses violates the First Amendment; (4) the Signage and Painting Restrictions violate the First Amendment and the Equal Protection Clause; (5) the Open Booth Restrictions violate the First Amendment; and (6) the judicial review provision is invalid.

A. Standard of Review

We review de novo the question of whether a state law or municipal ordinance violates the United States Constitution. See Gresham v. Peterson, 225 F.3d 899, 903 (7th Cir. 2000). However, in assessing the constitutionality of an allegedly vague or overbroad state law or ordinance, "a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). In the present case, no Indiana court has interpreted the Ordinance, and therefore, we have no authoritative judicial construction of the Ordinance's terms./3 See Gresham, 225 F.3d at 908.

B. Regulated Businesses

Plaintiffs contend that the Ordinance is impermissibly overbroad because the definition of regulated Media incorporates an excessive amount of protected speech. The Ordinance provides the following relevant definitions:

"Adult Bookstore", "Adult Novelty Store" or "Adult Video Store" means a commercial establishment which has as a significant or substantial portion of its stock-in-trade or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising to the sale or rental, for any form of consideration, [from:]

a. Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, video cassettes, slides, or other visual representations [collectively "Media"] which are characterized by the depiction or description of [nudity] or [sexual activities].

Section 125.02(A)(2).

Although municipalities may regulate adult bookstores, they may not impermissibly burden protected speech, see, e.g., Genusa v. City of Peoria, 619 F.2d 1203, 1210-12 (7th Cir. 1980). Plaintiffs argue on behalf of third parties who are deterred from engaging in

protected speech by what plaintiffs regard as the Ordinance's substantial threat of overbreadth. For a facial overbreadth challenge to be successful, plaintiffs must establish "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). Plaintiffs contend that the Ordinance restricts protected speech of parties not before the court thereby establishing a realistic danger of overbreadth.

Plaintiffs argue that the definition of regulated Media would bring any magazine or book within the Ordinance's scope that mentions sexual activities or shows nudity and, thus according to the plaintiffs, the Ordinance is overbroad. In determining whether Section 125.02(A)(2) is overbroad, we look at its plain meaning. See Schultz v. Cumberland, 228 F.3d 831, 849 (7th Cir. 2000). The Ordinance defines "Adult Bookstore," "Adult Novelty Store," and "Adult Video Store" as commercial establishments that, inter alia, "derive[ ] a significant or substantial portion or [their] revenues" from Media "characterized by the depiction or description of" nudity or sexual activities. See Section 125.02(A)(2) (emphasis added). "Characterized" means "to be a distinguishing characteristic of," and "characteristic" means "belonging to . . . essential nature of <a poetic style [characteristic] of the epic>." Webster's Third New Int'l Dictionary 376 (1986) (emphases added). The Ordinance's plain language limits its application to Media of which nudity or sexual activities form the essential component. Thus, protected speech remains outside the scope of the definition, and we reject plaintiffs' facial overbreadth challenge./4

C.  Sexual Devices

Plaintiffs next contend that Section 125.22, which prohibits the sale of devices "designed or marketed primarily for stimulation of human genital organs or for sadomasochistic use or abuse," is unconstitutionally vague and overbroad, and also violates fundamental rights protected by the Fourteenth Amendment. We

conclude that the district court did not adequately consider these issues, and accordingly, we remand for the district court to consider these claims in the first instance.

Plaintiffs contend that Section 125.22 is unconstitutionally vague under Kolender v. Lawson, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), because it vests complete discretion in the hands of the enforcement agency and fails to provide the minimal guidelines required for due process. Its concerns about arbitrary enforcement are well-taken because at oral argument, Mishawaka asserted that only some types of sexual devices--such as certain vibrators--were banned by Section 125.22, but others were not./5 Moreover, although Mishawaka did not articulate a difference between the allegedly prohibited vibrators and the permissible vibrators, Mishawaka asserted that it would enforce Section 125.22 against plaintiffs but not against other vendors of vibrators. Although such particularized enforcement might be constitutional, the record lacks any evidence addressing this issue./6 In order to determine whether Section 125.22 is unconstitutionally vague, we must remand for a factual development of the record addressing the types of sexual devices banned under Section 125.22 and the types of sexual devices permitted under Section 125.22.

Plaintiffs also raise vagueness concerns because although Section 125.22 bans sexual devices "designed or marketed primarily for the stimulation of the human genital organs," Section 125.22 does not ban sexual devices designed or marketed primarily for therapeutic use. We take note that stimulation of human genital organs forms part of medically-recognized therapeutic treatment for female sexual dysfunction. See, e.g., John P. Wincze & Michael P. Carey, Sexual Dysfunction: A Guide for Assessment and Treatment 151 (2d ed. 2001) (recommending vibratory stimulation as one of three courses of treatment); Handbook of Sexual Dysfunctions: Assessment and Treatment 269-73 (William O'Donohue & James H. Geer eds., 1993) ("Handbook") (listing vibratory use as necessary step to treat certain cases of female anorgasmia). In addition, FDA regulations conclusively establish the therapeutic and medical value of certain

sexual devices./7 See 21 C.F.R. sec. 884.5940(a) (2001); 21 C.F.R. sec. 884.5960(a) (2001); 21 C.F.R. sec. 884.5960 (1980); see also Williams v. Pryor, 41 F. Supp. 2d 1257, 1292 n.48 (N.D. Al. 1999), rev'd on other grounds, 240 F.3d 944 (11th Cir. 2001); State v. Hughes, 792 P.2d 1023, 1025 (Kan. 1990) (noting use of dildos and vibrators to treat urinary stress incontinence).

Because certain therapeutic treatments for sexual dysfunction often necessarily entail the stimulation of the human genital organs, see, e.g., Handbook at 269-73, Section 125.22 needs to provide standards for determining which of those two uses--stimulation as a part of therapy or merely stimulation--takes priority and thus is a sexual device's "primary" use. We must remand for due consideration by the district court because the record does not contain any information of whether it is possible to distinguish a sexual device's primary use from its auxiliary uses and the prevalence of each type of use, and such information is necessary in order to properly address this claim.

We also conclude that the district court did not adequately consider plaintiffs' fundamental rights challenges. At least two courts have found a ban on similar devices unconstitutional because they intruded upon the fundamental right to privacy, see Hughes, 792 P.2d at 1032; People v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348, 370 (Colo. 1985), and the Eleventh Circuit has also raised similar questions. See Williams, 240 F.3d at 955-56 (holding that a similar statute was not facially unconstitutional but re manding for "as applied" analysis); but see Kametches v. State, 251 S.E.2d 232, 234 (Ga. 1978) (finding that a ban on distribution of sexual devices did not invade privacy of adult or married couples); Coberly v. State, 640 S.W.2d 428, 430 (Tex. App. 1982) (concluding that prohibition on promotion of obscene devices did not violate individual right to privacy). In the present case, the district court did not address this issue specifically, and the record is too narrow to permit us to decide whether or to what extent Section 125.22 infringes upon a fundamental right. Accordingly, we must remand.

Finally, plaintiffs contend that Section 125.22 is unconstitutionally overbroad because it bans the sale of contraceptives in violation of Griswold v. Connecticut, 381 U.S. 479, 485, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). As the district court did not discuss this issue and the record does not contain any pertinent details, we remand plaintiffs' overbreadth challenge to determine whether Section 125.22 impermissibly intrudes upon the constitutionally permissible sale of prophylactics or is otherwise unconstitutionally overbroad.

Mishawaka suggests that Sewell v. Georgia, 435 U.S. 982, 98 S. Ct. 1635, 56 L. Ed. 2d 76 (1978) establishes the constitutionality of Section 125.22. In Sewell, the United States Supreme Court dismissed an appeal from the Georgia Supreme Court for want of a substantial federal question, see id. at 983, a disposition that "prevent[s] lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions" as applied to "the particular facts involved." Mandel v. Bradley, 432 U.S. 173, 176, 97 S. Ct. 2238, 53 L. Ed. 2d 199 (1977) (emphases added). The particular facts of the Georgia statute at issue in Sewell are materially different from Section 125.22, see Ga. Ann. Code sec. 2101(c) (1975), and we conclude that Sewell is not controlling./8

D.  License Registration Requirements

Relying on Cumberland, plaintiffs next contend that the Ordinance's provisions requiring business applicants to submit a residential address, recent photograph, Social Security number, tax identification number, and driver's license information, see sec.sec. 125.03(F)(8)-(10), are unconstitutional because they serve no legitimate governmental purpose. See 228 F.3d at 852 (invalidating identical provisions because only purpose of provisions was harassment). Plaintiffs also challenge the employee license requirements of submitting a residential address and telephone number, driver's license information, Social Security number, color photograph, and fingerprints contained in Sections 125.13(B)(4), (6), (7) & (9) on the same grounds. See id.

Mishawaka responds that these issues are moot because after the issuance of the Cumberland opinion, the Council issued a moratorium ceasing enforcement of these provisions until the "matter is resolved."

The general rule is that voluntary cessation of a challenged practice rarely moots a federal case, see Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000), because "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." See City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001) (citations omitted). In accordance with this principle, the Supreme Court has announced a stringent standard for determining whether an issue has been rendered moot by the defendant's voluntary conduct: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968) (emphasis added). The party asserting mootness bears a "heavy burden" of persuading the court that there is no reasonable expectation that the challenged conduct will reappear in the future. See Friends of the Earth, 528 U.S. at 189.

In City of Los Angeles v. Lyons, 461 U.S. 95, 97-98, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983), the plaintiff sought to enjoin the LAPD from applying police chokeholds to detainees. The district court granted the injunction, the Ninth Circuit affirmed, and the Supreme Court granted certiorari. See id. at 98-100. After the granting of certiorari, the City of Los Angeles issued a moratorium on police chokeholds that was to remain in effect until the City had the "opportunity to review and evaluate" the issue. Id. at 100 n.4. The Court held that the moratorium did not render the claim moot because the moratorium by its terms was not permanent. See id. at 101.

In the present case, Mishawaka has not overcome its "heavy burden" to show that the matter is moot. Mishawaka has stated

that it will "suspend enforcement" of the provisions only until the "matter is resolved." As in Lyons, the Mishawaka moratorium is not permanent and could be lifted at any time. Therefore, we turn to the merits of plaintiffs' claim.

Prior restraints provide public officials with the power to deny the use of a forum in advance of actual expression. See Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 553, 95 S. Ct. 1239, 1244, 43 L. Ed. 2d 448 (1975). Any system of prior restraint comes "bearing a heavy presumption against its constitutional validity" due to the danger of censorship. Id. at 558. There is no question that licensing registration requirements imposed on adult bookstore applicants and employees are prior restraints. See Genusa, 619 F.2d at 1218-19. However, the prior restraints in this case are constitutionally legitimate if they are proper time, place, or manner restrictions. See Cumberland, 228 F.3d at 851. Proper time, place, or manner restrictions must be narrowly tailored to serve a significant government interest unrelated to the suppression of free expression and leave open alternative channels for communication. See Ward v. Rock Against Racism, 491 U.S. 781, 791–802, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). In Cumberland, 228 F.3d at 852-53, the city required any applicant for a sexually-oriented business license or for an employee license to provide the following disclosures: the applicant's name; proof of applicant's age; the type of license for which the applicant is applying; the proposed location, address and description of the business premises; proof of an employee's age; required production of a residential address; recent color photograph; Social Security number; fingerprints; tax-identification number; and driver's license information ("registration requirements"). The issue was whether the registration requirements were narrowly tailored to protect against the detrimental secondary effects associated with sexually-oriented businesses. See id. at 851. We upheld the following registration requirements: the applicant's name; proof of applicant's age; the type of license for which the applicant is applying; the proposed location, address and descriptions of the business premises; and identifying

personal data. See id. at 852. We held that these data enabled the city to administer and monitor compliance with its zoning requirements and were, therefore, constitutional. See id. Further, we upheld requiring proof of employee age because it legitimately related to the government's interest in preventing underage employees from working for such businesses. See id. However, we invalidated the "required production of a residential address, recent color photograph, Social Security number, fingerprints, tax-identification number and driver's license information" because such information was "redundant and unnecessary for Cumberland's stated purposes . . . [and] serv[ed] no purpose other than harassment."/9 Id. (citation omitted).

Plaintiffs in the present case challenge provisions identical to the registration requirements invalidated in Cumberland. Sections 125.03(F)(8)-(10) require a business applicant to provide its mailing address and residential address, recent photograph, Social Security number, tax-identification number, and driver's license information. Sections 125.13(B)(4), (6), (7) & (9) require any employee of an adult business to supply a residential address and telephone number, driver's license information, Social Security number, color photograph and fingerprints. Mishawaka presents no compelling reason why we should decide this case differently than the court did in Cumberland. Therefore, because such information is "redundant and unnecessary for [Mishawaka's] stated purposes . . . [and] serve[s] no purpose other than harassment," id. at 852, we invalidate Sections 125.03(F)(8)-(10) and Sections 125.13(B)(4), (6), (7) & (9) of the Ordinance.

E.  Signage and Painting Restrictions

Plaintiffs next challenge Section 125.16, which regulates the outward appearance of a sexually-oriented business. Plaintiffs contend that the Signage Restrictions in Sections 125.16(D)(1) & (2) and the Painting Restrictions in Section 125.16(E) violate the First Amendment./10 Additionally, Plaintiffs contend that singling out sexually-oriented businesses for such restrictions violates the Equal

Protection Clause.

Plaintiffs' equal protection argument fails because the Supreme Court has repeatedly upheld the ability of municipalities to regulate sexually-oriented businesses in order to minimize the secondary effects associated with such businesses. See, e.g., City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986). With respect to plaintiffs' First Amendment challenge, because the Ordinance does not ban all advertising by sexually-oriented businesses, Section 125.16 is properly analyzed as a time, place, or manner restriction. Compare 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 500, 116 S. Ct. 1495, 134 L. Ed. 2d 711 (1996) (holding complete ban on commercial speech analyzed under stricter scrutiny rather than as a time, place, or manner restriction), with Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1219-20 (8th Cir. 1997) (holding that restrictions on commercial speech analyzed as time, place, or manner restrictions). Proper time, place, or manner regulations must be (1) justified without reference to the content of the regulated speech, (2) narrowly tailored to serve a significant government interest unrelated to the suppression of free expression, and (3) leave open alternative channels for communication. See Ward, 491 U.S. at 791.

A regulation is content-neutral if it is "justified without reference to the content of regulated speech." Id. (citation omitted). Such a regulation is neutral "even if it has an incidental effect on some speakers or messages but not [on] others." Id. The preamble to the Ordinance, and the studies relied on by the Council indicate that Mishawaka enacted the Signage and Painting Restrictions in order to minimize the adverse impact of sexually-oriented businesses on the surrounding area./11 Mishawaka's purpose of combating secondary effects that are unrelated to the content of the restricted speech renders Section 125.16 a content-neutral ordinance. See Renton, 475 U.S. at 47-48; Excalibur, 116 F.3d at 1220.

We next consider whether the Signage Restrictions in Sections 125.16(D)(1) & (2) and the Painting Restrictions in

Section 125.16(E), are "narrowly tailored to serve a significant governmental interest." Ward, 491 U.S. at 791. There is no question that minimizing the secondary effects of sexually-oriented businesses serves a significant governmental interest. See, e.g., Renton, 475 U.S. at 50. The issue is therefore narrowed to whether the Signage Restrictions in Sections 125.16(D)(1) & (2) and Painting Restrictions in Section 125.16(E) are themselves narrowly tailored to serve Mishawaka's significant interests.

The Signage Restrictions in Sections 125.16(D)(1) & (2) and the Painting Restrictions in Section 125.16(E) arenarrowly tailored if they advance a substantial interest that would be achieved less effectively absent the restrictions, and the restrictions do not "burden substantially more speech than is necessary" for such advancement. Ward, 491 U.S. at 799. "Narrow tailoring," therefore, does not require the restrictions to be the least restrictive means of serving Mishawaka's content-neutral interests, and we will not strike down the restrictions solely because we can envision a less restrictive or more effective means of furthering Mishawaka's interests. See id. at 799-800.

Mishawaka justifies the Signage and Painting Restrictions as narrowly tailored to combat urban blight and to prevent a decline in the value of surrounding properties. Mishawaka asserts that the restrictions are necessary to minimize the visual impact of the businesses on the neighborhood by making the businesses blend into their surroundings. In SDJ, Inc. v. City of Houston, 837 F.2d 1268, 1278 (5th Cir. 1988), the Fifth Circuit upheld a font and color restriction similar to Section 125.16(D)(2) and a Painting Restriction similar to Section 125.16(E)./12 Such restrictions were "appropriate in order to prevent a decline in the values of surrounding properties, and thus prevent deterioration of neighborhoods." SDJ, 636 F.Supp. at 1369, aff'd, 837 F.2d at 1278. We agree with the Fifth Circuit and therefore hold that Section 125.16(D)(2)'s font and color restriction and Section 125.16(E)'s Painting Restriction are appropriate in order "to prevent a decline in the values of

surrounding properties."/13 SDJ, 636
F.Supp. at 1369, aff'd, 837 F.2d at 1278.

However, we invalidate the Signage
Restriction in Section 125.16(D)(1),
which limits signage to "only the legal
name of the enterprise," because it is
substantially broader than necessary to
achieve Mishawaka's goals. Mishawaka
fails to articulate a single reason why
it is necessary to limit a sexually-
oriented business' signage solely to
displaying its name. Under Section
125.16(D)(1), a sexually-oriented
business will not be allowed to notify
the public about what type of store it
operates or what its hours of operation
are. Such a drastic restriction on
signage cannot be sustained without some
sort of evidentiary support. In
Cumberland, 228 F.3d at 853, we struck
several provisions of a licensing scheme
because the city "neither conducted nor
cited any study establishing its basic
premise" that those provisions were
necessary to achieve the desired goal.
Such provisions were substantially more
broad than necessary to combat secondary
effects.  See id. As in Cumberland,
Mishawaka cites no study nor provides any
argument showing the Signage Restriction
in Section 125.16(D)(1) to be narrowly
tailored. We invalidate Section
125.16(D)(1) because we conclude that
restricting a business to displaying only
its name "burden[s] substantially more
speech than is necessary to further"
Mishawaka's goal of combating deleterious
secondary effects such as urban blight
and a decline in property values. Ward,
491 U.S. at 799.

Mishawaka's reliance on Excalibur and
SDJ for the proposition that Section
125.16(D)(1) is narrowly tailored is
misguided. For instance, while the Eighth
Circuit upheld a challenge to the signage
restrictions in Excalibur, 116 F.3d at
1218-19, the statute at issue there only
addressed the size, shape and location of
the advertising. As opposed to Section
125.16(D)(1), the statutes at issue in
Excalibur and SDJ did not limit signage
to solely displaying the business' name
as does the Ordinance, cf. 116 F.3d at
1218-25; SDJ, 636 F.Supp. at 1384-85, and
we conclude that such a limitation is
impermissible under Ward. See 491 U.S. at
799 (holding regulation may not burden
more speech than is necessary to advance

government's interest).

F.  Booth Restrictions

Plaintiffs next challenge Section 125.14 of the Ordinance (the "Open Booth Restrictions"). Plaintiffs acknowledge that this court has upheld similar "open booth" restrictions in the past. See, e.g., Matney v. County of Kenosha, 86 F.3d 692, 700 (7th Cir. 1996). In Matney, we concluded that a Kenosha ordinance similar to the Ordinance constituted a constitutional manner restriction. See id. at 698. Plaintiffs assert that the Ordinance is more stringent than theKenosha ordinance and therefore violates the First Amendment./14

In Matney, we held that Kenosha's open booth restrictions were content-neutral time, place, or manner restrictions and served the legitimate governmental interest of combating the spread of communicable diseases and promoting safe and sanitary conditions. See id. at 695-96. We thus asked whether the Kenosha open booth restrictions were narrowly tailored to further that interest. See id. The plaintiffs contended that there were alternatives to the Kenosha open booth requirements that were less speech-intrusive. See id. at 696. We rejected that contention, noting that a regulation need not be the least restrictive or least intrusive means of achieving the government's legitimate, content-neutral interests. See id. Rather, the Kenosha open booth restrictions promoted a substantial government interest that would be achieved less effectively absent the restrictions and the restrictions were not substantially broader than necessary to achieve that interest. See id. Further, because the open booth restrictions left open alternative channels of communication, we upheld the Kenosha ordinance in its entirety. See id. at 697-98.

Plaintiffs concede, as they must, that the Open Booth Restrictions are content neutral. The plain language of the preamble to the Ordinance makes clear that it was passed for purposes of "preserv[ing] the health, safety and welfare" and preventing "the spread of sexually transmitted diseases." The Ordinance is aimed at the "secondary effects" of private viewing booths--the

possible spread of disease and the creation of unsanitary, unhealthy conditions--and not at the content of the films that are shown in the booths. See id. at 696.

Turning to the second criterion under Ward, plaintiffs also admit that the Open Booth Restrictions serve a legitimate government interest. Fighting the spread of sexually transmitted diseases and maintaining safe, sanitary conditions constitute a significant government interest. See id. Moreover, Open Booth Restrictions further that interest. Plaintiffs contend, however, that the Ordinance is not narrowly tailored to serve that interest.

We are satisfied that Mishawaka's goals of preventing the spread of disease and maintaining sanitary and safe conditions at sexually-oriented businesses "would be achieved less effectively absent the [open booth] regulation." Id. In the present case, plaintiffs make the same mistake as the plaintiffs in Matney did by contending that the restrictions are "not narrowly tailored . . . because they believe there are less speech-infringing possibilities." Id. For example, plaintiffs propose that video cameras or roaming security guards would accomplish Mishawaka's legitimate goals as effectively as the Open Booth Restrictions contained in the Ordinance. While this may be true, the possibility of less-speech-restrictive alternatives is, of course, not the proper inquiry under Ward. See Matney, 86 F.3d at 697. We thus conclude that the Open Booth Restrictions are not "substantially broader than necessary to achieve the government's interest." Ward, 491 U.S. at 800.

Moving on to the final Ward factor, we have repeatedly held that regulations like the Open Booth Restrictions leave open ample alternative channels of communication. See Matney, 86 F.3d at 697 (listing cases). Plaintiffs do not persuade us to disregard the holding in Matney. Therefore, we hold that the Open Booth Restrictions are constitutional time, place, or manner restrictions.

G.  Judicial Review

On appeal, plaintiffs contend that the

licensing requirements are facially invalid in their entirety because the Ordinance lacks a provision preserving the status quo, pending judicial review of the denial or revocation of an existing business's license. See Southeastern Promotions, 420 U.S. at 560 ("[A]ny restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo.") (emphasis added). Plaintiffs concede that this issue was neither raised before the district court nor considered by the district court, and generally, we do "not address, for the first time on appeal, an argument which has not been raised at the trial court level." Diersen v. Chicago Car Exchange, 110 F.3d 481, 485 (7th Cir. 1997). Although this general rule has exceptions, invocation of those exceptions is discretionary. See id. As stated above, we are remanding the case in part to allow the district court to specifically address plaintiffs' Section 125.22 challenge. Plaintiffs may raise the matter of facial invalidity at that time in order to allow the district court an initial opportunity to address the issue. Thus, we need not exercise our discretion at this time.

H.  Severability

   The severability clause in Section 125.23 of the Ordinance provides that "[i]f any section, subsection or clause of this Ordinance shall be deemed to be unconstitutional or otherwise invalid, the validity with the remaining section, subsection and clauses shall not be affected thereby." However, the severability clause can save the constitutionally viable remainder only if the invalidated elements were not "an integral part of the statutory enactment viewed in its entirety." Zbaraz v. Hartigan, 763 F.2d 1532, 1545 (7th Cir. 1985). We have found the following to be unconstitutional: several of Section 125.03's and Section 125.13's disclosure requirements, and Section 125.16(D)(1)'s Signage Restriction. In deference to the Ordinance's robust severability clause, we think that the unconstitutional provisions of the Ordinance may be severed workably from the rest of the provisions. See Cumberland, 228 F.3d at 853-54. Therefore, we permanently enjoin only the sections we strike as

unconstitutional and permit the operation of the sections that we either uphold or that were unchallenged.

III.  Conclusion

For the foregoing reasons, the following provisions of the Ordinance violate the First Amendment: Sections 125.03(F)(8)-(10) and Sections 125.13(B)(4), (6), (7) & (9) (certain registration restrictions) and Section 125.16(D)(1) (Signage Restriction). The following provisions of the Ordinance are constitutional: Section 125.02(A)(2) (definition), Section 125.16(D)(2) (Signage Restriction), Section 125.16(E) (Painting Restriction), and Section 125.14 (Open Booth Restrictions). We conclude that plaintiffs' challenges to Section 125.22 and to the judicial review provisions must be considered further by the district court. We order the invalidated provisions severed from the remainder of the Ordinance but offer no opinion regarding other provisions of the Ordinance that we did not address. Therefore, we AFFIRM in part and REVERSE in part the judgment of the district court and REMAND for proceedings consistent with this opinion.

FOOTNOTES

/1 After considering several studies concerning the deleterious secondary effects of sexually-orient-ed businesses, the council believed that sexual-ly-oriented businesses increased crime and urban blight, decreased property values, and contribut-ed to the spread of sexually transmitted and communicable diseases.

/2 No business in Mishawaka currently offers adult-oriented live entertainment.

/3 Mishawaka asserts that the Council issued an authoritative limiting construction. However, it is the duty of the state judiciary, not of the state executive or legislative branches, to authoritatively interpret state laws. See, e.g., United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 131 n.7, 93 S. Ct. 2665, 37 L. Ed. 2d 500 (1973) ("[W]e must leave to state courts the construction of state legislation.") (emphasis added).

/4 Plaintiffs' remaining overbreadth arguments are meritless and do not warrant discussion. See Young v. American Mini Theatres, Inc., 427 U.S.

50, 53 n.5, 96 S. Ct. 2440, 49 L. Ed. 2d 310 (1976) (upholding similar "significant or substantial portion of its stock-in-trade" clause); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 44, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986) (upholding similar "principle business purpose" clause).

/5 Mishawaka asserted that vibrators sold by plaintiffs were banned but vibrators sold at a local pharmacy were not banned.

/6 For example, the record does not explain the types of vibrators, dildos, and other sexual devices sold by plaintiffs that Mishawaka argues are banned by Section 125.22. Similarly, the record does not indicate the types of vibrators, dildos, and sexual devices that Mishawaka claims would not be banned by Section 125.22.

/7 Mishawaka does not dispute that many sexual devices have medical or therapeutic uses.

/8 The Eleventh Circuit reached a similar conclusion in Williams, 240 F.3d at 954 n.6.

/9 We also found the Cumberland ordinance's disqualification provisions to be unconstitutional, see id. at 853, and we note that the Ordinance has quite similar disqualification provisions. See Sections 125.05(C)(j), 125.13(B)(12)(c). Plaintiffs, however, concede that they do not have standing to challenge the disqualification provisions, so we do not rule on the matter at this time.

/10 Section 125.16(D)(1) provides that "[s]ignage shall contain no photographs, silhouettes, drawings or pictorial representations in any manner, and may contain only the legal name of the enterprise." Section 125.16(D)(2) provides that "[e]ach letter forming a word on a primary sign shall be of solid color, and each such letter shall be the same print-type, size, and color. The background behind such lettering on the display surface of a primary sign shall be of a uniform and solid color." Section 125.16(E) provides in relevant part that "[i]t shall be unlawful for the owner or operator of a sexually-oriented business . . . to allow the exterior portions of the establishment to be painted any color other than a single achromatic color."

/11 The preamble states that "it is not the intent of this ordinance to suppress any speech activities protected by the First Amendment . . . but to enact a content-neutral ordinance that addresses the adverse secondary effects of sexually oriented businesses."

/12 The statute at issue in SDJ is printed in its entirety in the district court's opinion in that case. SDJ, Inc. v. City of Houston, 636 F.Supp. 1359, 1384-85 (S.D. Tex. 1986) (quoting relevant portions).

/13 Plaintiffs concede that Sections 125.16(D)(2) & (E) leave open alternative avenues of communication as required by Ward.

/14 Specifically, plaintiffs contend that the Ordinance is not narrowly tailored because it requires that: (a) the manager's station not exceed 32 square feet of floor space; (b) an employee be present at the manager's station at all times that any patron is present; (c) the manager's station have a view of every patron area excluding restrooms; and (d) said view be unobstructed. Cf. id. at 694-95 (lacking similar restrictions).